UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
**MAYTINEE BIRD**, as Parent and Natural
Guardian of **H.C.,** and **MAYTINEE BIRD**,
Individually,

      Plaintiff,

-against-

                 24-cv-01554 (VSB)

**DAVID C. BANKS**, in his official capacity as
Chancellor of the **NEW YORK CITY
DEPARTMENT OF EDUCATION**, and the **NEW
YORK CITY DEPARTMENT OF EDUCATION,**

      Defendants.
-------------------------------------------------------------------------X


## PLAINTIFF'S OBJECTIONS TO REPORT & RECOMMENDATION


Rory J. Bellantoni, Esq.
Liberty & Freedom Legal Group
*Attorneys for Plaintiff*
105 East 34th Street  #190
New York, NY 10016
rory@pabilaw.org

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**……………...…………………………………………………...i

**PRELIMINARY STATEMENT** ................................................................................................ 1

**I. THE SRO DECISION IS NOT ENTITLED TO DEFERENCE** ......................................... 1

**II. THIS COURT SHOULD CONSIDER PLAINTIFF'S ADDITIONAL EVIDENCE** ....... 5

**III. PLAINTIFF PRODUCED SUFFICIENT EVIDENCE TO SHOW THAT iBRAIN WAS APPROPRIATE**............................................................................................................... 10

**IV. THE BALANCE OF THE EQUITIES FAVORS PLAINTIFF**....................................... 14

**CONCLUSION** ........................................................................................................................ 16

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.C. ex rel. M.C. v. Bd. of Educ. of The Chappaqua Cent. Sch. Dist.*,
    553 F.3d 165 (2d Cir. 2009) ................................................................................................ 1, 2

*Bd. of Educ. v. Rowley*,
    458 U.S. 176 (1982) .................................................................................................................. 3

*Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*,
    510 U.S. 7 (1993) .............................................................................................................. 11, 12

*Frank G. v. Bd. of Educ.*,
    459 F.3d 356 (2d Cir. 2006) ........................................................................................... 3, 4, 13

*G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*,
    751 F. Supp. 2d 552 (S.D.N.Y. 2010) ................................................................................ 5, 6, 7, 8

*Gagliardo v. Arlington Cent. Sch. Dist.*,
    489 F.3d 105 (2d Cir. 2007) ...................................................................................... 3, 4, 10, 13

*Gordon v. Target Corp.*,
    318 F.R.D. 242 (E.D.N.Y. 2016) .............................................................................................. 7

*Gregory K. v. Longview Sch. Dist.*,
    811 F.2d 1307 (9th Cir. 1987) ................................................................................................... 3

*Grim v. Rhinebeck Cent. Sch. Dist.*,
    346 F.3d 377 (2d Cir. 2003) ...................................................................................................... 6

*L.V. v. Rye City Sch. Dist.*,
    2023 WL 5744421 (S.D.N.Y. Sept. 6, 2023) ......................................................................... 6, 7

*Lillbask ex rel. Mauclaire v. State of Conn. Dept. of Educ.*,
    397 F.3d 77,n. 2 (2d Cir. 2005) ............................................................................................... 10

*M.H. v. New York City Dep't of Educ.*,
    685 F.3d 217 (2d Cir. 2012) ...................................................................................................... 2

*Mr. & Mrs. A. ex rel. D.A. v. New York City Dep't of Educ.*,
    769 F. Supp. 2d 403 (S.D.N.Y. 2011) ..................................................................................... 14

*Mrs. B. v. Milford Bd. of Educ.*,
    103 F.3d 1114 (2d Cir. 1997) ................................................................................................ 2, 3

*N.R. ex rel. T.R. v. Dept. of Educ. of City Sch. Dist. of City of New York*,
   2009 WL 874061 (S.D.N.Y. Mar. 31, 2009) ............................................................................. 14

*Schied ex rel. Schied v. Bd. of Educ. of Penfield Cen. Sch. Dist.*,
   2006 WL 2927875 (W.D.N.Y. Oct. 12, 2006) ........................................................................... 5

*Schied v. Bd. of Educ.*,
   No. 05-CV-6255CJS(P), 2006 U.S. Dist. LEXIS 74332 (W.D.N.Y. Oct. 11, 2006) ................... 3

*Town of Burlington v. Dep't of Educ. for Com. of Mass.*,
   736 F.2d 773 (1st Cir. 1984) ..................................................................................................... 3

*Walczak* [*Walczak v. Florida Union Free Sch. Dist.*,
   142 F.3d 119 (2d Cir. 1998) ............................................................................................... 3, 10

**Statutes**

20 U.S.C. 1415(i)(2)(C) ................................................................................................... 1, 5, 9
20 U.S.C. § 1401(a)(18) ......................................................................................................... 11
28 U.S.C. § 636(b) .................................................................................................................... 1

Plaintiff MAYTINEE BIRD, as Parent and Natural Guardian of H.C., and MAYTINEE BIRD, Individually, by and through the undersigned counsel and pursuant to 28 U.S.C. § 636(b), hereby files her Objections to the Report and Recommendation ("R&R") entered by United States Magistrate Judge Katharine H. Parker on July 7, 2025. [ECF No. 33]. The R&R recommends denying Plaintiff's Motion for Summary Judgment [ECF No. 18] ("Plaintiff's MSJ") and granting Defendants' Cross-Motion for Summary Judgment. [ECF No. 24] ("Defendants' MSJ"). For the reasons that follow, this Court should decline to follow the R&R, and instead grant Plaintiff's MSJ and deny Defendants' MSJ.

### PRELIMINARY STATEMENT

In this action brought under the Individuals with Disabilities Education Act ("IDEA"), Plaintiff seeks to overturn the erroneous outcome of the administrative process. Specifically, the SRO erroneously found that Plaintiff failed to satisfy Prong II of the *Burlington/Carter* test, and is not entitled to reimbursement. The R&R recommends (1) deferring to SRO Bates's Decision [ECF No. 33 at 13-16], (2) refusing to consider Plaintiff's additional evidence [*id.* at 17-20],[1] (3) affirming SRO Bates's finding that Plaintiff failed to produce sufficient evidence to show that the International Institute for the Brain ("iBRAIN") was appropriate [*id.* at 20-24], and (4) finding, under Prong III, that the equities favor Defendants and not Plaintiff [*id.* at 24-26]. Plaintiff objects to each of these recommendations.

### I.   THE SRO DECISION IS NOT ENTITLED TO DEFERENCE

This Court must generally give deference to IHO and SRO decisions on "difficult and persistent questions of educational policy," *A.C. ex rel. M.C. v. Bd. of Educ. of The Chappaqua*

---

[1] 20 U.S.C. 1415(i)(2)(C) provides, "In any action brought under this paragraph, the court--**(i)** shall receive the records of the administrative proceedings; **(ii) shall hear additional evidence at the request of a party; and (iii)** basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."(emphasis added).

1

*Cent. Sch. Dist.*, 553 F.3d 165, 171 (2d Cir. 2009), except where the decisions are poorly reasoned or relate to purely legal questions. *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 244 (2d Cir. 2012) ("[d]eterminations grounded in thorough and logical reasoning should be provided more deference than decisions that are not"); *Mrs. B. v. Milford Bd. of Educ.*, 103 F.3d 1114, 1122 (2d Cir. 1997). As outlined in detail below, the SRO Decision was not well reasoned and is not entitled to deference.

The R&R inadequately supported its conclusion that this Court should defer to the SRO Decision. The R&R spends a significant amount of time noting that federal courts typically show deference to administrative decisions. [ECF No. 33 at 13-16]. Plaintiff does not dispute this proposition. What the R&R fails to address are the situations in which deference is not owed; the exceptions to the general rule. This case involves an exception to the general rule.

Plaintiff argued in her Memorandum of Law in Support of Motion for Summary Judgment [ECF No. 20] ("Plaintiff's Memo") that the IHO and SRO decisions are not entitled to deference because they "do not demonstrate 'thorough and logical reasoning . . . .'" [*Id.* at 11] (quoting *Mrs. B.*, 103 F.3d at 1122). The R&R states that the administrative decisions are "thorough and well-reasoned." [*Id.* at 21]. However, it then immediately states: "Neither administrative hearing officer decided any particularly difficult questions of educational policy in their decisions denying reimbursement." [*Id.*]. It is precisely in cases involving "difficult questions of educational policy" that deference is owed. *See A.C. ex rel. M.C.*, 553 F.3d at 171. The R&R concedes that this is not such a case, yet defers nevertheless.

The R&R notes that the administrative decisions found the "dearth of objective evidence showing the unilateral placement at iBrain for the 2023-2024 school year" to be appropriate. [ECF No. 33 at 21]. This finding involved a simple weighing of the evidence, without the need to decide

2

"any particularly difficult questions of educational policy" outside this Court's expertise. Federal courts are particularly equipped to weigh evidence. By the R&R's reasoning, this Court need not defer to the SRO Decision on Prong II, as it is more than capable of weighing the evidence presented. "[H]ow much deference to give state educational agencies... is a matter for the discretion of the courts." *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987). The Court is then "'free to accept or reject the findings in part or in whole.'" *Schied v. Bd. of Educ.*, No. 05-CV-6255CJS(P), 2006 U.S. Dist. LEXIS 74332 at *10 (W.D.N.Y. Oct. 11, 2006) (quoting *Gregory K.*, 811 F.2d at 1311 (quoting *Town of Burlington v. Dep't of Educ. for Com. of Mass.*, 736 F.2d 773, 792 (1st Cir. 1984), *aff'd sub nom. Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359 (1985). This Court should exercise its discretion and give no deference to the SRO's erroneous weighing of the evidence.

The cases cited in the R&R do not support its conclusion. The R&R cites *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105 (2d Cir. 2007). [ECF No. 33 at 14-15]. However, far from holding that a federal court should simply defer to an administrative officer's findings, the *Gagliardo* Court engaged in a thorough analysis of the evidence. The Court set forth the deference standard to be observed:

> We applied the *Rowley* [*Bd. of Educ. v. Rowley*, 458 U.S. 176 (1982)] deference standard in *Walczak* [*Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119 (2d Cir. 1998)], in which we overturned a district court's reversal of an SRO's decision under the IDEA. We noted that, in order for the district court to conduct an "independent" review of the sufficiency of an IEP under the IDEA that does not "impermissibly meddl[e] in state educational methodology," it must examine the record for "objective evidence" that indicates "whether the child is likely to make progress or regress under the proposed plan." *Walczak*, 142 F.3d at 130 (quoting *Mrs. B.*, 103 F.3d at 1121). And in *Frank G.* [*Frank G. v. Bd. of Educ.*, 459 F.3d 356 (2d Cir. 2006)], we recently noted that the district court is required to employ the same objective evidence standard when ascertaining the appropriateness of a parent's private placement, *see* 459 F.3d at 364, always being mindful, of course, that deference to the administrative proceedings is particularly warranted when the district court's decision is based solely on the administrative record, *see id.* at 367.

3

*Gagliardo*, 489 F.3d at 113. The Court then thoroughly examined the evidence and analyzed the district court's discussion of it. For example, the district court concluded that the student needed a "supportive" rather than "therapeutic" environment. *Id.* at 114. "Importing its own view on the latter notion, the district court found that a supportive environment was achieved at Oakwood through a combination of its Quaker values and S.G.'s private therapy." *Id.*

Rather than holding that the district court should have deferred to the IHO rather than coming to its own conclusion, the Second Circuit opined that "[t]he district court's reasoning ignores the substance of [the physician witness's] recommendations." *Id.* The Court then proceeded to analyze the witness's testimony in depth. *Id.* In performing this analysis, there is no further mention of deference to the IHO's findings. The Second Circuit ultimately overruled the district court because the IHO's findings were "reasoned and supported by the record." *Id.* But this was after a thorough review and analysis by the federal court of appeals. Here, as set forth below, the SRO's findings were not reasoned or supported by the record.

> The R&R cites *Gagliardo* further:
>
> > It explained that "even where there is evidence of [a child's] success [at the private school], courts should not disturb a state's denial of IDEA reimbursement where . . . the chief benefits of the chosen school are the kind of educational and environmental advantages and amenities that might be preferred by the parents of any child, disabled or not." *Id.* at 115. Rather, "unilateral private placement is only appropriate if it provides 'education instruction specifically designed to meet the unique needs of a handicapped child.'" *Id.* (citing *Frank G.*, 459 F.3d at 365).

[ECF No. 33 at 15].

This principle is irrelevant here, where there is no suggestion that the benefits of iBRAIN are "the kind of educational and environmental advantages and amenities that might be preferred by the parents of any child, disabled or not." iBRAIN is undisputedly a school designed to meet the needs of severely disabled students with highly intensive management needs.

4

The R&R dispensed with the holding in *Schied*, cited by Plaintiff in her Memo, finding that it "applied the Ninth Circuit's test and cited Ninth Circuit case law." [ECF No. 33 at 15]. However, **Schied is a New York case that applies Second Circuit law**. It analyzed a Ninth Circuit case because the Second Circuit cited it favorably. *Schied ex rel. Schied v. Bd. of Educ. of Penfield Cen. Sch. Dist.*, No. 05-CV-6255 CJSP, 2006 WL 2927875, at *7 (W.D.N.Y. Oct. 12, 2006). *Schied* held that, where administrative decisions are not well reasoned, a district court should review the appropriateness of a private placement *de novo*. *Schied ex rel. Shied*, 2006 WL 2927875, at *10. This is perfectly consistent with Second Circuit law, but was unceremoniously discarded in the R&R.

Here, the SRO, like the IHO before it, did nothing more than weigh evidence. As the R&R conceded, the SRO did not address any particularly difficult questions of educational policy. As this Court is fully equipped to review the record and find "objective evidence" of the appropriateness of iBRAIN, this Court need not defer to the SRO's Decision. Further, it should not defer because, as discussed more fully below, the SRO Decision was not well reasoned. This Court should, like the Second Circuit in *Gagliardo*, perform an independent review of the record, fully engage with the evidence, and come to a reasoned conclusion.

## II.     THIS COURT SHOULD CONSIDER PLAINTIFF'S ADDITIONAL EVIDENCE

Section 1415(i)(2)(C)(ii) provides "[i]n any action brought under this paragraph, the court . . . shall hear additional evidence at the request of a party." This Court has discretion to consider additional evidence. *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 751 F. Supp. 2d 552, 555 n.1 (S.D.N.Y. 2010), *aff'd sub nom. G.B. v. Tuxedo Union Free Sch. Dist.*, 486 F. App'x 954 (2d Cir. 2012). Specifically, this Court has observed: "courts generally accept evidence that was not withheld in bad faith, is relevant, and does not change the administrative review into a trial de

5

novo." *Id.* (citing *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 380 (2d Cir. 2003) ("Federal courts reviewing administrative determinations under IDEA must tak[e] into account not only the record from the administrative proceedings, but also any further evidence presented before the District Court by the parties.").

The R&R concludes that there was no evidence of bad faith, and that the evidence is relevant. [ECF No. 33 at 17]. The R&R then erroneously concludes that to admit Plaintiff's additional evidence "without first having been considered by the administrative experts, would unquestionably be inappropriate and 'undercut the statutory role of administrative expertise,' as it would entail the court weighing educational policy issues *de novo* when these issues are better addressed by educational policy experts." [*Id.*] (quoting *L.V. v. Rye City Sch. Dist.*, No. 7:22-CV-04255-VR, 2023 WL 5744421, at *2 (S.D.N.Y. Sept. 6, 2023)). The R&R then opines that "introducing this evidence now, regardless of any purported bad faith, would be deeply unfair to Defendants." [*Id.* at 18]. The R&R sets forth a standard that is unworkable and inconsistent with case law in this district.

Essentially, the R&R concludes that the additional evidence is highly relevant, but cannot be considered because it should have been considered below, "by educational policy experts." If that is the standard, no new evidence would ever be considered in federal court. That result is contrary to the statute. If the additional evidence would not have been relevant below, it is not considered; if it would have been relevant, it is unfair to consider it *de novo* in this Court. Then, when is any additional evidence appropriate? The IDEA explicitly states that federal courts are to consider additional evidence. The R&R recommends imposing an unworkable standard.

The R&R states: "Permitting this wholly new evidence while not providing for a discovery period would cause the sort of needless undue surprise that discovery exists to prevent." [*Id.*].

6

However, the additional evidence offered by Plaintiff is a surprise to no one. As DOE knows well, iBRAIN creates its own IEPs for each student for each school year—and it creates progress reports for each Student. Indeed, the IEPs from previous school years were introduced at the administrative hearing. Furthermore, the administrative officers concluded (wrongly) that the absence of these documents essentially doomed the Plaintiff's case. This is no "trial by ambush"; this is an effort to get this Court to consider relevant evidence that everyone was already aware of.

The R&R cites *Gordon v. Target Corp.*, 318 F.R.D. 242, 246–47 (E.D.N.Y. 2016) to support its findings. [ECF No. 33 at 18]. However, first, *Gordon* involved the discovery process in a personal injury case, which is not relevant in an IDEA case. Furthermore, *Gordon* involved a situation in which the defendant attempted to withhold surveillance footage of the accident that was the subject of the action, evidence that was likely critical to the plaintiff's case. *Gordon*, 318 F.R.D. at 243.

Not so here, where DOE did not even put on a case, and most likely already had at least some of the additional evidence, namely, the 2023-2024 iBRAIN IEP. The case law cited in the R&R does not support its conclusion. The R&R relies on *L.V.* [ECF No. 33 at 17]. That case is inapposite. It involved the school district's attempt to preclude discovery sought by the parent in a case involving claims under the ADA and the Rehabilitation Act. *L.V.*, 2023 WL 5744421, at *2-3. First, that case involved legal claims under statutes not relevant here. Second, in that case, this Court denied the district's motion for a protective order and allowed discovery. *Id.* at 13–14. *L.V.* does not support the R&R's conclusion.

The R&R also cites *G.B. ex rel. N.B.*, 751 F. Supp. 2d at 554 n.1. [ECF No. 33 at 17]. That case actually supports the Plaintiff's position. In *G.B.*, the parents sought to introduce additional

7

evidence in this Court, including, *inter alia*, progress reports and an IEP, like here. 751 F.Supp.2d 554 n.1. This Court *allowed* the additional documents, finding:

> There is no indication that N.B.'s parents withheld these documents in bad faith, in an effort to 'sandbag' the District. Indeed, the District should not be surprised by these documents because it created most of them. Moreover, these documents are relevant, because they chart N.B's progress, but do not change the character of this proceeding, because they are brief and largely confirm information that was presented at the administrative hearing.

*Id.* The same is true here. The R&R concedes that there is no evidence of bad faith. While DOE did not create the iBRAIN IEP or progress reports, it should not be surprised by those documents, and may already have them. And like in *G.B.*, the documents Plaintiff seeks to introduce are relevant, as they "chart [H.C.]'s progress, but do not change the character of this proceeding, because they are brief and largely confirm information that was presented at the administrative hearing." *Id.* The additional evidence sought here confirms the live testimony of the Parent and iBRAIN's Deputy Director at the administrative hearing. *G.B.* is on point—it contradicts the R&R's conclusion.

The R&R states that allowing additional evidence will not conserve judicial resources, and "likely would require discovery and further proceedings in this court, rather than simply a review of the administrative record below." [ECF No. 33 at 18]. The R&R cites no authority for this observation. While it may certainly involve less work for this Court only to consider the administrative record, that cannot be the standard. The R&R does not explain how admitting the additional evidence proffered by the Plaintiff will "require discovery and further proceedings," but even if it did, discovery is a normal part of litigation and not something to be avoided at the expense of a party's case.

The R&R notes, without support, that admitting evidence that post-dated the administrative process "would be inappropriate." [ECF No. 33 at 18]. The R&R offers no authority, and Plaintiff

8

is aware of none, that precludes, under § 1415(i)(2)(C)(ii), the admission of additional evidence that post-dates the hearing. Indeed, that eventuality would seem to favor admissibility since the evidence was not available at the time of the underlying hearing.

The R&R states that "it is impossible at this point to know whether the Student would have made similar progress had the Student been placed" at the DOE school. [ECF No. 33 at 18-19]. The R&R attempts to explain this curious observation: "In other words, the post-hoc justification assumes the placement was best suited for the Student's needs because of the purported progress shown but offers no basis for consideration of whether an alternative placement also would have reasonably met the Student's individual needs." [ECF No. 33 at 19]. It is not clear what "alternative placement" is being contemplated here.

At any rate, the standard under Prong II is not whether the private placement is appropriate because there is no conceivable "alternative placement" that might also have been appropriate. The analysis under Prong II (to determine if the private placement is appropriate) is whether the private placement provided the Student with a program designed to meet the Student's unique needs and was likely to produce progress. DOE failed to offer the Student a free appropriate public education ("FAPE"); that is undisputed by everyone at every level of this case. However, the R&R suggests that additional evidence of such progress is inappropriate because it does not prove that the student could not have made progress elsewhere. That simply is not the standard.

The R&R notes that the Plaintiff did not state why the evidence was not presented below. [ECF No. 33 at 19]. First, even if true, this would not be dispositive, as there is no **bright-line** rule that a litigant must show good cause for not presenting evidence first at the administrative level. Indeed, as the Second Circuit has noted, 20 U.S.C. § 1415(i)(2)(C)(ii) states that, in a civil action

9

under IDEA, the court "shall hear additional evidence at the request of a party." *See Lillbask ex rel. Mauclaire v. State of Conn. Dept. of Educ.*, 397 F.3d 77, 81 at fn. 2 (2d Cir. 2005).

Furthermore, the Plaintiff explained that the evidence that was available was not offered "under a belief that the evidence offered was sufficient to show the appropriateness of the program, particularly as it had been found to be appropriate in the preceding years." [ECF No. 20 at 14]. While the R&R disagrees that evidence from preceding years is relevant [ECF No. 33 at 19], the Plaintiff had reason for not presenting the evidence that was available. Moreover, as discussed above, some of the evidence was not available at the time of the administrative hearing. The R&R concedes this but states: "And while it is true that a subset of the proffered additional evidence was not available at the time the independent hearing was conducted, even the evidence that was available at that time was not presented." [*Id.*]. In this way, the R&R employs an all-or-nothing standard. Because some of the evidence was available, none of it should be admitted. In fact, each item of the additional evidence offered should be considered on its own merits, and some of the evidence simply did not exist at the time of the impartial hearing.

### III. PLAINTIFF PRODUCED SUFFICIENT EVIDENCE TO SHOW THAT iBRAIN WAS APPROPRIATE

The R&R concludes that the evidence of progress at the administrative hearing was insufficient because it involved "past indicators of progress." [ECF No. 33 at 20]. First, the R&R cites no authority for the proposition that evidence of past progress cannot be considered. It cites *Walczak*, 142 F.3d at 130, for the proposition that "it is the likelihood of progress resulting from the unilateral placement in a given year that courts consider." [ECF No. 33 at 20]. *Walczak* involved Prong I, and did not address Prong II, and is inapposite here, other than stating the standard. The R&R also quotes *Gagliardo*, 489 F.3d at 115, for the proposition that, while progress is relevant, it "'does not *itself* demonstrate that a private placement was appropriate.'" [ECF No. 33 at 20]

10

(emphasis added). However, Plaintiff is not relying on progress only. *Gagliardo* itself held that progress was relevant; it just cannot be the only evidence. It is not the only evidence here.

The R&R states: "In this case, it was impossible for IHO Rahman to evaluate the likelihood that the iBrain placement in the 2023-2024 school year would likely produce progress with reference to objective evidence because neither the IEP nor the proposed class schedules for the year to be reimbursed were produced." [*Id.*]. This conclusion is erroneous for multiple reasons. First, a private placement is not even required to *offer* an IEP. *See Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 13–14 (1993) (holding that the requirements of 20 U.S.C. § 1401(a)(18), including the IEP requirement, do not apply to private placements). The R&R concedes this point, then requires the IEP anyway because iBRAIN went above and beyond the IDEA's requirements and created one. [ECF No. 33 at 21]. How can a parent fail to show that a private placement is appropriate by failing to produce an IEP that the school was not even required to create?

In addition, the R&R completely discounts the live testimony at the hearing simply because it was not supplemented with documentary evidence of progress from the 2023-2024 school year. And this after asserting that evidence of progress is not sufficient. The iBRAIN Deputy Director of Special Education, Caleb Asomugha, and the Parent both testified regarding the appropriateness of iBRAIN. [ECF No. 20 at 8ff]. The R&R applies the standard, unsupported by any legal authority, that documentary evidence is required to satisfy Prong II. There is no such standard and, at any rate, Plaintiff provided documentary evidence, as set forth above. Live testimony does not need to be "corroborated" by documents, especially when, as here, the testimony was undisputed. The R&R erroneously asserts that the "testimony is insufficient to make up for the absence of truly *objective* indicators of progress," despite the fact that the R&R has already conceded that no

11

evidence of progress is required to satisfy Prong II (though it is relevant and may support the evidence). [ECF No. 33 at 22] (emphasis in original). Essentially, the R&R finds that the absence of documentary evidence of progress and the 2023-2024 iBRAIN IEP doomed Plaintiff's Prong II case, despite the fact that evidence of progress is not required, and a private placement is not even required to offer an IEP, let alone produce one at an administrative hearing. The R&R's conclusion is erroneous.

Moreover, the R&R erroneously finds that the testimony of Caleb Asomugha and the Parent was "cursory." [ECF No. 33 at 21-22]. A review of the record indicates that the testimony, which was undisputed and supported by the documentary evidence produced, was more than sufficient to satisfy Prong II.

Regarding related services and transportation, the R&R states that "there was little in the record to demonstrate the related services, inclusive of individual nursing or assistive technology devices, physical therapy, occupational therapy, speech-language therapy, music therapy, and parent counseling, the Student was receiving." [*Id.* at 22]. However, it must be noted that all of these services are not even necessarily required under the IDEA. Private placements under Prong II are not held to the same standard as the DOE under Prong I. The Supreme Court has suggested that parents carry a lighter burden under Prong II than what the DOE carries under Prong I. The Supreme Court has exempted parents from certain obligations the DOE must satisfy. For example, when choosing a placement for a child with disabilities, parents may choose a school that is not state approved, does not hire certified special education teachers, does not create an IEP for the student, and does not fully align with the IDEA's definition of a FAPE. *Florence County School Dist. Four*, 510 U.S. at 13–14.

Under Prong II, the plaintiff's program must be "specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction." *Frank G.*, 459 F.3d at 365. Further, the placement must be "likely to produce progress and not regression." *Gagliardo*, 489 F.3d at 112. This is not a high standard. The program at iBRAIN is admittedly rigorous. However, iBRAIN's standard is significantly higher than the IDEA standard for a private placement under Prong II. Even if evidence of related services was lacking, as the R&R suggests (and Plaintiff denies), the evidence easily satisfies the IDEA's low bar under Prong II.

Again, the R&R discards Mr. Asomugha's testimony because it was "uncorroborated." [ECF No. 33 at 23]. There is simply no requirement for the Parent to provide multiple sources of evidence to prove their case. The testimony presented at the hearing was undisputed and did not require corroboration. The Plaintiff provided substantial evidence of H.C.'s participation in iBRAIN's program from previous school years. That evidence, together with the live testimony related to the 2023-2024 school year, is more than sufficient to satisfy Prong II.

While certainly, as the R&R emphasizes, a private program must satisfy the IDEA's standard every school year, a student, for example, with a traumatic brain injury, who needs a 1:1 travel nurse, will need that nurse from one school year to the next. If H.C. needed a travel nurse during the 2022-2023 school year because she needed a g-tube for feeding and had a seizure disorder, and then she received a 1:1 travel nurse in 2023-2024, it is reasonable to conclude that it is for the same reasons that she had a travel nurse during the prior school year.

Moreover, the R&R notes, "Without adequate testimony, Plaintiff could not elaborate on the meaning of the DOE IEP's note that the Student was 'dependent in all transfers.'" [ECF No. 33 at 23]. If the information is in the DOE IEP, it is undisputed. The IDEA's requirements do not create

13

a game of "gotcha." Undisputed evidence is just that, and facts do not need to be proven with multiple different sources. The R&R holds Plaintiff to a standard far higher than that required by the IDEA.

IV. **THE BALANCE OF THE EQUITIES FAVORS THE PLAINTIFF**

The R&R misapplies the third prong of the *Burlington/Carter* test. First, a school district is precluded from asserting that the equities weigh in its favor when it concedes it failed to provide the student with a FAPE. *N.R. ex rel. T.R. v. Dept. of Educ. of City Sch. Dist. of City of New York*, No. 07 CV. 9648 (BSJ), 2009 WL 874061, at *7 (S.D.N.Y. Mar. 31, 2009) ("the Court is unaware of, any case in which equitable considerations favored a school district that failed to offer a disabled child a school placement prior to the commencement of the school year"). That is the case here. Because DOE conceded that it failed to provide H.C. with a FAPE, the equities cannot favor the Defendants. FULL STOP.

Moreover, on the Parent's side, equitable considerations may include such things as the Parent's participation in IEP meetings, visits to the proposed school placements, and giving DOE a Ten-Day Notice of their unilateral placement decision. *Mr. & Mrs. A. ex rel. D.A. v. New York City Dep't of Educ.*, 769 F. Supp. 2d 403, 419–20 (S.D.N.Y. 2011). In short, the purpose of Prong III is to measure the level of cooperation from each side regarding *the process of providing a FAPE*—particularly in the creation of an IEP. It is *not* to consider the parties' relative diligence in presenting their case at the administrative hearing. Throughout its discussion, the R&R applies the Prong III analysis to the actual impartial hearing itself.

For example, the R&R notes that Plaintiff stated that "she 'consistently complied with procedural requirements and acted in good faith' and 'submitted all relevant documents...in a timely manner.'" [ECF No. 33 at 24] (quoting ECF No. 20 at 19). The R&R refutes this accurate statement

14

by pointing out that Plaintiff is now seeking, as additional evidence, documents that were not presented at the impartial hearing. [*Id.* at 24-25]. However, in the Prong III context, submitting all necessary documents means providing those required for the DOE to provide a FAPE, such as medical forms and evaluations. Prong III does not measure how well the Parent presented her Prong II case at the administrative hearing. Yet, that is what the R&R considers.

The R&R equates DOE's failure to provide an IEP, Prior Written Notice, and School Location Letter, on the one hand, to the Parent's failure to submit the 2023-2024 iBRAIN IEP into evidence at the administrative hearing, on the other. [*Id.* at 25]. The R&R then states that DOE likely only prejudiced its own Prong I case by failing to provide these documents. [*Id.*]. This demonstrates a misperception of the Prong III analysis. DOE failed to provide documents that it was required to provide in order to *offer the Student a FAPE*. The issue was not that DOE failed to present these documents at the administrative hearing, thus damaging its Prong I case. The issue was that it did not provide these documents to the Parent as part of its obligation to provide an education for her child. The Parent did not fail to provide the necessary documents for DOE to provide H.C. with an education, such as medical forms or prior evaluations. Parent's failure to provide such documents could have hindered DOE's ability to provide a FAPE, and could be considered under Prong III. The failure to proffer documents into evidence at the administrative hearing is not considered under Prong III. Yet, all the R&R considers in its Prong III analysis is whether documents were presented or not at the hearing. That is erroneous.

Finally, the R&R notes:

> the administrative record makes plain that the sole reason provided for finding that the DOE failed to provide a FAPE was the DOE's failure to appear at the independent hearing. While the Court does not consider the DOE's failure to appear to count in their favor in the balance of the equities (in fact, it counts against them), it nevertheless notes that the weight of the case law and record suggests that had the DOE not defaulted, it may very well have been able to prevail on the issue of

15

whether a FAPE was provided. This means that Plaintiff should have been better prepared for the hearing and, at the very least, provided iBrain's IEP.

[ECF No. 33 at 26].

That has nothing to do with the equities under Prong III, and further demonstrates the R&R's misperception and misapplication of the Prong III analysis.

## CONCLUSION

For the foregoing reasons, Plaintiff objects to the R&R. Specifically, Plaintiff objects to the recommendations to (1) defer to SRO Bates's Decision, (2) refuse to consider Plaintiff's additional evidence, (3) affirm SRO Bates's finding that Plaintiff failed to produce sufficient evidence to show that iBRAIN was appropriate, and (4) find, under Prong III, that the equities favor Defendants and not Plaintiff. Plaintiff requests that this Court reject the R&R in its entirety, and grant Plaintiff's Motion for Summary Judgment and attorneys' fees and deny Defendants' Cross-Motion for Summary Judgment.

Dated: July 21, 2025
New York, NY

Respectfully submitted,
Liberty & Freedom Legal Group
*Attorneys for Plaintiff*

By:   */S/*
Rory J. Bellantoni, Esq. (RB2901)
105 East 34th Street, #190
New York, NY 10016
(646) 850-5035
rory@pabilaw.org

16